IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Edward W. Nottingham**

Civil Action No. 05–cv–01380–EWN–MEH

TARA NEWLAND,

      Plaintiff,

v.

STEVINSON TOYOTA EAST, INC.,

      Defendant.

---

## ORDER AND MEMORANDUM OF DECISION

---

      This is an employment discrimination case.  Plaintiff Tara Newland asserts that Defendant Stevinson Toyota East, Inc., her former employer, sexually harassed her in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* (2006) ("Title VII").  This matter is before the court on "Defendant's Motion for Summary Judgment," filed on March 24, 2006.  Jurisdiction is premised upon the existence of a federal question, pursuant to 28 U.S.C. § 1331 (2006).

## FACTS

### 1.    *Factual Background*

      From March 17, 2003 through June 16, 2003, Plaintiff worked for Defendant as a car salesperson.  (Br. in Supp. of Def.'s Mot. for Summ. J., Statement of Undisputed Material Facts ¶¶ 5, 32 [filed Mar. 24, 2006] [hereinafter "Def.'s Br."]; *admitted at* Br. in Supp. of Pl.'s Resp. to

Def.'s Mot. for Summ. J., Disputed Material Facts ¶¶ 6, 28 [filed Apr. 13, 2006] [hereinafter

"Pl.'s Resp."].)[1]  During her employment, Plaintiff worked for a sales team, supervised by team

leaders Richard Carni and Phillip Burns.  (*Id.*, Statement of Undisputed Material Facts ¶ 21;

*admitted at* Pl.'s Resp., Disputed Material Facts ¶ 19.)  In turn, sales managers Michael Sitzman,

Ho Tran, and Brian Tyson supervised Messrs. Carni and Burns.  (*Id.*, Statement of Undisputed

Material Facts ¶ 22; *admitted at* Pl.'s Resp., Disputed Material Facts ¶ 20.)  General Manager Jim

Malafronte supervised all of Defendant's employees.  (*Id.*, Statement of Undisputed Material

Facts ¶ 23; *admitted at* Pl.'s Resp., Disputed Material Facts ¶ 21.)

Plaintiff asserts that from April 2003 to June 2003, she "was subject to numerous incidents

of inappropriate conduct by Defendant's employees and agents."  (Compl. ¶ 20 [filed July 24,

---

[1]Pursuant to my practice standards:

[a]ny party opposing the motion for summary judgment shall in a section of the brief styled Response to Statement of Undisputed Facts, admit or deny the asserted material facts set forth by the movant.  The admission or denial shall be made in separate paragraphs numbered to correspond to movant's paragraph numbering.

(*See* Practice Standards — Civil, Special Instructions Concerning Motions for Summary Judgment ¶ 4.)  Wholly ignoring these standards, Plaintiff has submitted a section styled "Disputed Material Facts," in which she proffers new, additional facts and responds to Defendant's factual assertions — albeit not in corresponding numbered paragraphs.  (Pl.'s Resp., Disputed Material Facts.)  When Plaintiff responds to one of Defendant's statements, she specifically delineates the number thereof.  (*Id.*)  Instead of moving to strike Plaintiff's brief in light of her obvious non-compliance, Defendant evidently painstakingly combed through the brief, finding and connecting Plaintiff's responses to Defendant's assertions and responding to Plaintiff's new assertions in its reply.  (Def.'s Reply in Supp. of Def.'s Mot. for Summ. J., Reply Concerning Undisputed Facts [filed May 1, 2006] [hereinafter "Def.'s Reply"].)  Defendant's herculean undertaking to create order from chaos is duly noted.  I admonish Plaintiff for her flagrant failure to comport with my requirements and warn that such transgressions will not be tolerated in future submissions.

2005] [hereinafter "Compl."].)  Most of Plaintiff's allegations lack any temporal context.  (*See* Compl.; Pl.'s Resp.)  I set forth my findings of fact accordingly.

### a.      *Undated Accusations*

Regarding her co-workers, Plaintiff asserts that Long Nguyen, a fellow salesperson, directed repeated lewd and sexually charged comments, suggestions, and demands at her. (Compl. ¶ 21; *see also* Def.'s Br., Statement of Undisputed Material Facts ¶ 25; *admitted at* Pl.'s Resp., Disputed Material Facts ¶ 23.)  Additionally, Plaintiff testified that Mr. Nguyen "tried putting his hand on [her] back" and said he wanted to give her a massage.  (Def.'s Br., Excerpts of Dep. Tr. of Tara Newland at 47.)[2]

As to her supervisors, Plaintiff asserts that Mr. Burns asked Plaintiff to assist him in sexually gratifying himself.  (Compl. ¶ 28.)  Plaintiff alleges that when she refused Mr. Burns's request and warned him she would complain if he repeated this behavior, he replied: (1) there was no one to whom Plaintiff could complain; (2) Plaintiff would be fired if she complained; and (3) he would fire her if she did not appreciate how her co-workers treated her.  (*Id.* ¶¶ 29–30.)  Plaintiff asserts that when she complained to unspecified "supervisors" about Mr. Burns's aforementioned behavior, they accused her of having sex with one of her co-workers.  (*Id.* ¶ 33.)

Plaintiff asserts that she told Mr. Malafronte she was interested in working in Defendant's finance department.  (Def.'s Br., Statement of Undisputed Material Facts ¶ 28; *admitted at* Pl.'s

---

[2]Contrary to any rule of this court, Defendant attached several deposition transcripts and affidavits to its brief without designating them as numbered exhibits.  Accordingly, I refer to those attachments by the title Defendant has offered.

Resp., Disputed Material Facts ¶ 25.)  Plaintiff testified Mr. Malafronte responded that such a promotion would be possible if a position in the department became open and if Plaintiff pursued additional training.  (*Id.*, Excerpts of Dep. Tr. of Tara Newland at 47.)  Plaintiff testified that she never sought such a promotion.  (*Id.*, Excerpts of Dep. Tr. of Tara Newland at 46.)  Plaintiff maintains that at some point after she told Mr. Malafronte of her interest, Mr. Carni stated he could help her obtain a position in the finance department in exchange for: (1) sexual favors; and (2) falsely accusing Messrs. Sitzman and Tyson of drug abuse so that Mr. Carni could obtain a higher position.  (*Id.*; *see also* Pl.'s Resp., Ex. 12 at 132 [Newland Dep.].)  Additionally, Plaintiff contends that Mr. Carni directed explicit sexual comments at her, including descriptions of his sexual encounters and his sexual dreams involving Plaintiff.  (Compl. ¶¶ 22–23.)

### b.    *Dated Accusations*

Plaintiff contends that on or about June 2, 2003, Messrs. Carni and Burns accused Plaintiff of having sex with other employees and told Plaintiff that Mr. Malafronte enjoyed receiving fellatio in his car.  (*Id.* ¶¶ 34–35.)  On or about June 10, 2003, Plaintiff complained to Mr. Sitzman, who refused to help her and stated she would be fired for complaining.  (*Id.* ¶¶ 37, 41.)  Plaintiff claims that Mr. Sitzman subsequently told her about a case in which a female plaintiff sued her employer for touching her breast and was awarded six million dollars.  (*Id.* ¶ 39.)  Mr. Sitzman then offered to touch Plaintiff's breast to incite a law suit, and suggested they should share the proceeds therefrom.  (*Id.*)  Finally, Mr. Sitzman described his sexual encounters to Plaintiff and offered to impregnate her.  (*Id.* ¶ 24; Pl.'s Resp., Ex. 8 at 107 [Newland Dep.].)  On

June 16, 2003, Plaintiff ceased coming to work.  (Def.'s Br., Statement of Undisputed Material Facts ¶ 32; *admitted at* Pl.'s Resp., Disputed Material Facts ¶ 28.)

### c.     *Plaintiff's Reports of Harassment*

When Plaintiff was first hired, she received an employee handbook and policy manual (the "Manual"), which contained Defendant's anti-discrimination and harassment policies.  (*Id.*, Statement of Undisputed Material Facts ¶¶ 6–7; *admitted at* Pl.'s Resp., Disputed Material Facts ¶ 7.)  Plaintiff signed: (1) an acknowledgment page, indicating that she had received and read the Manual; and (2) Defendant's non-discrimination policy, which described procedures for reporting harassment.  (*Id.*, Statement of Undisputed Material Facts ¶¶ 8–9; *admitted in relevant part at* Pl.'s Resp., Disputed Material Facts ¶ 8.)  Plaintiff admits she knew that pursuant to Defendant's non-discrimination policy, employees were required to report any harassment by: (1) contacting Defendant's corporate office or calling Defendant's employee concern hotline; and (2) notifying either their manager or Defendant's human resources department.  (*Id.*, Statement of Undisputed Material Facts ¶ 10; *admitted at* Pl.'s Resp., Disputed Material Facts ¶ 9.)  Defendant opines that Plaintiff failed to follow its non-discrimination policy.  Not surprisingly, Plaintiff disagrees.

Plaintiff admits she knew that Kevin Starbuck was the manager of Defendant's human resources department.  (*Id.*, Statement of Undisputed Material Facts ¶ 43; *admitted at* Pl.'s Resp., Disputed Material Facts ¶ 38.)  Mr. Starbuck visited Defendant's dealership several times and spoke with Plaintiff during such visits.  (*Id.*, Statement of Undisputed Material Facts ¶ 42; *deemed*

*admitted at* Pl.'s Resp., Disputed Material Facts ¶ 37.)[3]  Plaintiff never directly complained about

or mentioned any sexual harassment to Mr. Starbuck.  (*Id.*, Statement of Undisputed Material

Facts ¶ 44; *admitted in relevant part at* Pl.'s Resp., Disputed Material Facts ¶ 39.)

Plaintiff testified that sometime between June 2, 2003 and June 10, 2003 she called

Defendant's corporate office and left a message with "[w]hoever answered the phone."  (*Id.*,

Statement of Undisputed Material Facts ¶ 47, Excerpts of Dep. Tr. of Tara Newland at 99–100;

*admitted in relevant part at* Pl.'s Resp., Disputed Material Facts ¶ 42.)  Plaintiff testified that in

her message, she left only her name, telephone number, and a request that her call be returned.

(*Id.*, Excerpts of Dep. Tr. of Tara Newland at 100.)  Plaintiff's testimony evidently contradicts her

sworn statement in an affidavit she presented to the Equal Employment Opportunity Commission

("EEOC") that she "attempted to complain . . . by leaving a phone message . . . and by faxing a

note" in March 2003.  (Pl.'s Resp. Ex. 22 at 4 [EEOC Affidavit].)

Additionally, Plaintiff testified that she attempted to call Defendant's employee concern

hotline once in late March 2003.  (Def.'s Br., Statement of Undisputed Material Facts ¶ 49,

Excerpts of Dep. Tr. of Tara Newland at 89–90, 176; *admitted at* Pl.'s Resp., Disputed Material

Facts ¶ 44; *see also* Pl.'s Resp., Ex. 22 at 4 [EEOC Affidavit].)  Plaintiff testified that: (1) the

employee concern hotline was a facsimile line rather than a telephone line; (2) she attempted to

---

[3]Plaintiff hotly disputes Defendant's assertion that she "conversed" with Mr. Starbuck and
alleges she only exchanged greetings with him.  (Pl.'s Resp., Disputed Material Facts ¶ 37.)
Plaintiff testified that Mr. Starbuck "said '[h]ello'" to her and "[a]sked [her] how things were
going."  (*Id.*, Ex. 5 at 40 [Newland Dep.].)  Consequently, I find no dispute that Mr. Starbuck
and Plaintiff spoke during his visits.

send a facsimile over the line; and (3) her facsimile stated "please call me," and made no mention

of sexual harassment.  (Def.'s Br., Statement of Undisputed Material Facts ¶ 50; *admitted at* Pl.'s

Resp., Disputed Material Facts ¶ 45.)

## 2.    *Procedural History*

On May 24, 2005, Plaintiff received a right-to-sue letter from the EEOC.  (Compl. ¶ 7.)

On July 24, 2005, Plaintiff timely filed a complaint in this court, in which she alleged claims for

*quid pro quo* sexual harassment and hostile work environment sexual harassment.  (Compl.)  On

March 24, 2006, Defendant moved for summary judgment on both of Plaintiff's claims.  (Def.'s

Br.)  Defendant argues that there is no genuine issue of fact as to either claim and, if there is,

Plaintiff cannot overcome Defendant's affirmative defense to her hostile work environment claim.

(*Id.*)  On April 13, 2006, Plaintiff responded to Defendant's motion.  (Pl.'s Resp.)  On May 1,

2006, Defendant filed a reply brief in support of its motion.  (Def.'s Reply.)

## *ANALYSIS*

## 1.    *Legal Standard*

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the court may grant

summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions

on file, together with the affidavits, if any, show that there is no genuine issue as to any material

fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c)

(2006); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986); *Concrete Works, Inc.

v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994).  The moving party bears the

initial burden of showing an absence of evidence to support the nonmoving party's case.  *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works*, 36 F.3d at 1518 (citing *Celotex*, 477 U.S. at 325). The nonmoving party may not rest solely on the allegations in the pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see* Fed. R. Civ. P. 56(e) (2006). A fact in dispute is "material" if it might affect the outcome of the suit under the governing law; the dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997) (citing *Anderson*, 477 U.S. at 248). The court may consider only admissible evidence when ruling on a summary judgment motion. *See World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985). The factual record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment. *Byers v. City of Albuquerque*, 150 F.3d 1271, 1274 (10th Cir. 1998) (citing *Concrete Works*, 36 F.3d at 1517).

**2.      Evaluation of Claims**

**a.      Preliminary Matter: Title VII Primer**

Title VII prohibits an employer from "discriminat[ing] against any individual with respect to [] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e–2(a)(1) (2006). This statutory provision prohibits subjecting an employee to sexual harassment. *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65–66 (1986). "Courts have consistently recognized two distinct categories of sexual harassment claims: *quid pro quo* sexual harassment, and hostile work environment sexual harassment." *Hicks*

*v. Gates Rubber Co.*, 833 F.2d 1406, 1413 (10th Cir. 1987); *accord Meritor*, 477 U.S. at 65–66.

In the instant case, Plaintiff brings claims under both categories. (Compl.)  Despite this fact,

Plaintiff repeatedly misapplies hostile work environment standards to her *quid pro quo* arguments.

(Pl.'s Resp., *passim*.)  Plaintiff's mistaken contention that "Title VII does not distinguish between

types of violations" may explain her misapplication. (*Id.* at 24.)  While it is true that the Supreme

Court has downplayed usage of the labels "*quid pro quo*" and "hostile work environment," the

Court has nonetheless continually recognized a difference between the two concepts.  *See*

*Lutkewitte v. Gonzales*, 436 F.3d 248, 250–52 (D.C. Cir. 2006) (describing Supreme Court's

distinction between *quid pro quo* and hostile work environment).

      For Plaintiff's benefit and edification, as well as for purposes of structuring this Order and

Memorandum of Decision, I offer the following sexual harassment jurisprudence *précis*.  In

*Burlington Indus., Inc. v. Ellerth*, the Supreme Court declared that the terms "*quid pro quo*" and

"hostile work environment" are "helpful in making a rough demarcation between cases in which

threats are carried out and those where they are not or are absent altogether" and are mainly

relevant "when there is a threshold question whether a plaintiff can prove discrimination in

violation of Title VII."  524 U.S. 742, 751, 753 (1998).  Generally, "the principle significance of

the distinction is to instruct that Title VII is violated by either explicit [*quid pro quo*] or

constructive [hostile work environment] alterations in the terms or conditions of employment and

to explain the latter must be severe or pervasive."  *Id.* at 752.  In the case at bar, Defendant

moves for summary judgment on both of Plaintiff's sexual harassment claims. (Def.'s Br.)  With

the framework set forth above in mind, I address Defendant's arguments regarding each claim in turn.

### b.      Quid Pro Quo *Sexual Harassment*

Defendant first moves for summary judgment on Plaintiff's *quid pro quo* harassment claim. (Def.'s Br. at 13–14.) "'When a plaintiff proves that a tangible employment action resulted from a refusal to submit to a supervisor's sexual demands, he or she establishes that the employment decision itself constitutes a change in the terms and conditions of employment that is actionable under Title VII.'" *Smith v. Cashland, Inc.*, 193 F.3d 1158, 1160 (10th Cir. 1999) (quoting *Ellerth*, 524 U.S. at 754). "The gravamen of a *quid pro quo* sexual harassment claim is that tangible job benefits are conditioned on an employee's submission to conduct of a sexual nature and that adverse job consequences result from the employee's refusal to submit to the conduct." *Hicks*, 833 F.2d at 1414. Employers are strictly liable for the actions of their supervisor-employees who engage in *quid pro quo* sexual harassment. *Walton v. Johnson & Johnson Servs.*, 347 F.3d 1272, 1280 (11th Cir. 2003); *accord McPherson v. HCA-HealthONE, LLC*, 202 F. Supp. 2d 1156, 1168 (D. Colo. 2002). This heightened liability standard exists in part because the "acts of supervisors have greater power to alter the environment than acts of co-employees generally." *Faragher v. City of Boca Raton*, 524 U.S. 775, 805 (1998).

Here, Defendant argues Plaintiff cannot establish that either: (1) Defendant's employees conditioned job benefits on Plaintiff's submission to sexual conduct; or (2) Plaintiff suffered an adverse tangible employment action at all, much less one based on her refusal to submit. (Def.'s Br. at 14.) Plaintiff: (1) counters that Defendant cannot escape liability if she does not establish a

tangible employment action; (2) maintains she has established proof of tangible employment actions in the form of Mr. Sitzman's response to her complaints of sexual harassment; and (3) implicitly suggests she has established such proof in the form of her constructive discharge. (Pl.'s Resp. at 25–26.)  Plaintiff is mistaken on all counts.

At the outset, I note that Plaintiff misconstrues the law.  By definition, *quid pro quo* harassment is harassment that explicitly culminates in a tangible employment action.  *Wilson v. Muckala*, 303 F.3d 1207, 1221 (10th Cir. 2002).  Thus, absent the possibility that adverse job consequences resulted from an employee's refusal to submit to sexual conduct, "there can be no legitimate claim of *quid pro quo* sexual harassment."  *Id.*  It follows logically that "[a]n employer may refute a *quid pro quo* harassment claim by [] proving no negative employment action took place."  *Burns v. Snow*, 130 F. App'x 973, 984 (10th Cir. 2005) (citing *Smith* 193 F.3d at 1160).

Turning to the alleged tangible employment acts themselves, I find that none is sufficient to support Plaintiff's claim.  First, Plaintiff asserts that she has established a tangible employment action in Mr. Sitzman's statement "that he would aid in her claims of sexual harassment if she allowed him to touch her breasts, and when [she] refused, [Mr.] Sitzman refused to take any remedial action against [Messrs.] Burns and Carni to prevent their ongoing, prevalent harassment."  (Pl.'s Resp. at 25.)  It is difficult to ascertain what evidence supports Plaintiff's contention.  Plaintiff indirectly cites several portions of her deposition testimony — many of which relate to actions of individuals other than Mr. Sitzman.  (*See, e.g.*, *id.*, Material Disputed Facts ¶¶ 6, 19–20, 24–27, 48, Ex. 9 at 205 [Newland Dep.], Ex. 10 at 97 [Newland Dep.], Ex. 14 at 102 [Newland Dep.].)  The deposition sections Plaintiff cites that do reference Mr. Sitzman

involve: (1) his alleged statement that Plaintiff would be fired for complaining about sexual

harassment; and (2) his alleged offer to touch Plaintiff's breast "for the purpose of creating a

lawsuit" and share the "proceeds of any claim or settlement with [Defendant]." (*Id.*, Ex. 8 at 107

[Newland Dep.], Ex. 11 at 103, [Newland Dep.]; Def.'s Br., Excerpts of Dep. Tr. of Tara

Newland at 104–05.)  More importantly, even if Plaintiff could substantiate her contention,

neither refusing to redress sexual harassment nor imposing conditions upon such redress suffices

as a tangible employment action.  A "tangible employment action" is "a significant change in

employment status, such as hiring, firing, failing to promote, reassignment with significantly

different responsibilities, or a decision causing a significant change in benefits." *Ellerth*, 524 U.S.

at 761.  Plaintiff does not argue that Mr. Sitzman's alleged conduct resulted in a significant

change in her employment status, and I decline the opportunity to do so for her.

Next, Plaintiff indirectly argues that she was constructively discharged, which ought

suffice as tangible employment action to support her *quid pro quo* claim.[4]  (Pl.'s Resp. at 26,

36–37.)  Constructive discharge occurs when an "employer by its illegal discriminatory acts has

made working conditions so difficult that a reasonable person in the employee's position would

feel compelled to resign." *Derr v. Gulf Oil Corp.*, 796 F.2d 340, 344 (10th Cir. 1986); *accord*

*Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1221 (10th Cir. 2002).  "The bar is quite high in

such cases: a plaintiff must show [s]he had no other choice but to quit." *Garrett*, 305 F.3d at

---

[4]Plaintiff does not plead a separate claim for constructive discharge, but alleges in her complaint that she was "forced to leave her job."  (Compl. ¶ 60.)  Affording liberal construction, as I must, I find Plaintiff's allegation to be sufficient to invoke constructive discharge analysis.

1221; *see Yearous v. Niobrara County Mem. Hosp.*, 128 F.3d 1351, 1356 (10th Cir. 1997)

(same).  The Supreme Court has held that constructive discharge may suffice as a tangible

employment action when an official act underlies the constructive discharge.  *Pa. State Police v.*

*Suders*, 542 U.S. 129, 140–41 (2004).  However, I need not delve into such minutiae, as Plaintiff

fails to establish a genuine issue of fact as to the threshold issue of whether she was constructively

discharged.

     Without citation to record evidence, Plaintiff asserts that: (1) she "suffered routine

harassment;" (2) when she complained about such harassment, Messrs. Burns, Carni, and Sitzman

responded with further harassment; and (3) she attempted to use Defendant's reporting

procedures without success.  (Pl.'s Resp. at 36.)  Plaintiff asserts further that "[a]fter seeking

repeated help and finding no relief, Plaintiff was forced to leave her job to end the severe and

pervasive harassment."  (*Id.*)  Without substantiation, Plaintiff's assertions are merely conclusory,

and thus cannot serve to create a genuine issue of fact to survive summary judgment.  *See L & M*

*Enters. v. BEI Sensors & Sys. Co.*, 231 F.3d 1284, 1287 (10th Cir. 2000) (deeming conclusory

allegations insufficient to create a genuine issue of fact to defeat summary judgment).

Moreover, even if Plaintiff had cited substantiating evidence, as will be discussed in further detail

below, the allegations she uses to evince her constructive discharge are the same as those she uses

to establish a hostile work environment.  (Pl.'s Resp. at 33–35, 36–37.)  Fatally to Plaintiff's

arguments, constructive discharge requires "something more" than pervasive sexual harassment.

*Suders*, 542 U.S. at 141; *see Rogers v. City-County Health Dep't*, 30 F. App'x 883, 888 (10th

Cir. 2002) ("By definition, a claim of *quid pro quo* sexual harassment must be supported by a

negative employment action that is separate and distinct from the underlying sexual misconduct."); *Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir. 2001) ("Constructive discharge requires a greater degree of harassment than that required by a hostile environment claim.").

In accordance with the foregoing, Plaintiff's *quid pro quo* claim must fail.  Given that she has not established the existence of a tangible employment action at all, Plaintiff's allegations simply cannot serve to establish a genuine issue of fact that any tangible employment action resulted from her refusal to submit to a supervisor's sexual demands.  *Smith*, 193 F.3d at 1160; *see also Burns*, 130 F. App'x at 984 (holding plaintiff's claim inadequate where plaintiff failed to demonstrate that tangible job benefits or reprisal were premised upon whether she granted or refused sexual requests).  Consequently, Defendant is entitled to summary judgment on Plaintiff's *quid pro quo* claim.

At the conclusion of her arguments regarding *quid pro quo* harassment, Plaintiff ambitiously asserts:

> [E]ven if the court finds no genuine issue of fact exists regarding a tangible employment action, Plaintiff may still prevail under the *quid pro quo* analysis, whereas [sic] Defendant would then be allowed to raise an affirmative defense against the *quid pro quo* allegations, where [sic] Plaintiff did not submit to the harasser's advances and did not suffer any tangible effects on her employment (*e.g.* compensation, terms, conditions[,] or privileges of employment).[5]

---

[5]Perhaps Plaintiff's opaque prolixity is in homage to Lewis Carroll's Duchess, who advises Alice: "Never imagine yourself not to be otherwise than what it might appear to others that what you were or might have been was not otherwise than what you had been would have appeared to them to be otherwise."  LEWIS CARROLL, ALICE'S ADVENTURES IN WONDERLAND 97 (Puffin 1997) (1865).  Alice responds that she could have better understood the Duchess's statement if it

(Pl.'s Resp. at 25.)  In making this statement, Plaintiff woefully misapplies hostile work

environment law, which contemplates the principles Plaintiff describes.  With Plaintiff's conflation

in mind, I turn to her hostile work environment claim.

>    ### c.   *Hostile Work Environment*

The Tenth Circuit has held that:

> Title VII's prohibition of employment discrimination based on sex encompasses
> hostile work environment sexual harassment.  This harassment occurs where
> [sexual] conduct has the purpose or effect of unreasonably interfering with an
> individual's work performance or creating an intimidating, hostile, or offensive
> working environment.  To form the basis of a claim, the sexual harassment must be
> sufficiently severe or pervasive to alter the conditions of [the victim's] employment
> and create an abusive working environment.  Based on the totality of the
> circumstances, the environment must be perceived both subjectively and
> objectively as abusive.

*Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 672 (10th Cir. 1998) (citations omitted) (internal

quotation marks omitted) (alterations in original).  To establish that a hostile work environment

existed, Plaintiff must demonstrate that: (1) she is a member of a protected group; (2) she was

subjected to unwelcome harassment; (3) the harassment was based on her sex; and (4) due to its

severity or pervasiveness, the harassment altered a term, condition, or privilege of Plaintiff's

employment and created an abusive working environment.  *Seymore v. Shawver & Sons, Inc.*, 111

F.3d 794, 797, 798 (10th Cir. 1997).  Defendant argues that it is entitled to summary judgment

because Plaintiff's allegations are insufficient to demonstrate the "severe or pervasive" harassment

required to maintain a hostile work environment claim.  (Def.'s Br. at 14–15.)  Evidently speaking

_____

were written down.  *Id.*  After reviewing Plaintiff's submissions, I posit that Alice was wrong.

to the arguments presented rather than the requisite elements listed above, Plaintiff argues she has established harassment "both severe and pervasive enough that her workplace become [sic] both subjectively and objectively hostile." (Pl.'s Resp. at 34.)

### i.      Evidence of Hostile Work Environment

Plaintiff argues she has raised a genuine issue of fact as to her claim based upon: (1) unspecified harassment that occurred "on a daily basis;" and (2) six incidents of harassment cited by Defendant in *its* brief — Plaintiff does not deign to specify them herself. (Pl.'s Resp. at 33.) Plaintiff's only substantiation as to the former is her testimony that the harassment "happened every day on a daily basis continually." (*Id.*, Ex. 19 at 199 [Newland Dep. Except].) Plaintiff provides no specification or detail as to who allegedly harassed her or what actions allegedly took place "every day." (*Id.*, *passim*.) Regarding the latter, Plaintiff fails to specify the six purported incidents that support her claim, but cites various paragraphs in her statement of facts detailing certain allegations. To wit: (1) Mr. Nguyen's offer to rub Plaintiff's shoulders; (2) Mr. Nguyen's offer to take Plaintiff's husband to a massage parlor for sexual gratification; (3) Mr. Carni's offer for sexual favors in partial exchange for aid in obtaining a promotion into the finance department; (4) Mr. Burns's request that Plaintiff aid him in sexually gratifying himself; (5) Mr. Sitzman's offers to grope Plaintiff in order to orchestrate a false lawsuit; and (6) Mr. Sitzman's offer to impregnate Plaintiff. (Pl.'s Resp., Disputed Material Facts ¶¶ 27, 48, Ex. 8 at 107 [Newland Dep.], Ex. 11 at 103 [Newland Dep.], Ex. 15 at 134 [Newland Dep.], Ex. 16 at 94 [Newland Dep.], Ex. 20 at 70 [Newland Dep.]; *see also* Def.'s Br., Excerpts of Dep Tr. of Tara Newland at 46, 104–05, 108, 131.)

In analyzing a hostile work environment claim, a court may consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys.*, 510 U.S. 17, 22–23 (1993).  While every factor may be taken into account, no single factor is required.  *Id.*  At best, Plaintiff's substantiated allegations amount to several offensive utterances and one offer of potential aid conditioned upon sex and lies at the rate of approximately one incident every two weeks.

I find Plaintiff's allegations insufficient to establish a question of fact as to the existence of a hostile work environment.  First, "Title VII is not a general civility code for the American workplace." *Dick v. Phone Directories Co.*, 397 F.3d 1256, 1263 (10th Cir. 2005) (citation and internal quotation marks omitted).  Indeed, "[t]he focus of the inquiry in a hostile work environment claim, as the name suggests, is on whether the workplace is permeated with discriminatory intimidation, ridicule, and insult." *Lockard v. Pizza Hut*, 162 F.3d 1062, 1073 (10th Cir. 1998) (internal quotation marks and citations omitted).  On the whole, Plaintiff has presented a series of isolated events and offensive utterances that cannot raise an issue of fact as to the existence of a hostile work environment. *Faragher*, 524 U.S. at 788.  More importantly, even assuming *arguendo* that Plaintiff could demonstrate a hostile work environment, her claim would still fail.  In addition to the existence of a sexually hostile work environment, Plaintiff must establish a basis for imposing liability upon Defendant. *See Ford v. West*, 222 F.3d 767, 775 (10th Cir. 2000) (holding that to survive summary judgment, a plaintiff must support an inference of a hostile work environment and state a basis for employer liability).

### ii.     *Employer Liability*

Concerning liability, Plaintiff posits that "[t]wo [] types of analysis or [sic] required in this case to determine employer liability, whether [Defendant] is not only negligent, but [sic] are they [sic] subject to vicarious liability."[6]  (Pl.'s Resp. at 24.)  Plaintiff's precise meaning is unclear. Despite her statement, Plaintiff does not discuss negligence beyond the sentence cited above.  In fact, Plaintiff pursues only vicarious liability in her brief, arguing that "Defendant fails support [sic] the only [a]ffirmative [d]efense allowable to contradict vicarious liability."  (*Id.* at 26.) Plaintiff's silence regarding negligence is particularly surprising given her allegations that Mr. Nguyen harassed her, for negligence is the only basis upon which an employer may be held liable where the alleged harasser is the plaintiff's co-worker.  *Lockard*, 162 F.3d at 1074.

Still, at least in the abstract, Plaintiff is correct.  An employer may be held either directly or vicariously liable for a hostile work environment created by its employees.  *Ellerth*, 524 U.S. at 757–65.  An employer may be held directly liable if the employer's negligence allows the actionable hostile work environment to exist or persist.  *Bolden*, 43 F.3d at 552.  Alternatively, an employer may be vicariously liable where the alleged harasser is a supervisory employee, subject to the affirmative defense that the employer exercised reasonable care to prevent and correct promptly any harassing behavior and the plaintiff failed to take advantage of the employer's preventative and corrective procedures.  *Suders*, 542 U.S. at 137; *see also Wilson*, 303 F.3d at 1221 (explaining that an employer may be vicariously or directly liable for a hostile work

---

[6]Plaintiff's prose manifests the occasional futility of the Spell Check function — even if it is fully utilized.

environment).  In the instant case, because both parties limit their discussions to vicarious liability, I follow suit.  Defendant asserts it is entitled to summary judgment because it can sufficiently prove the aforementioned affirmative defense.  (Def.'s Br. at 17–22.)

When, as in the instant case, no tangible employment action is taken, an employer may defend itself against a hostile work environment claim "by showing both (1) that it had installed a readily accessible and effective policy for reporting and resolving complaints of sexual harassment, and (2) that the plaintiff unreasonably failed to avail herself of that employer-provided preventive or remedial apparatus."  *Suders*, 542 U.S. at 134; *see also Rubidoux v. Colo. Mental Health Inst.*, 173 F.3d 1291, 1294 (10th Cir. 1999) (same).  A defendant must prove both prongs of the affirmative defense in order to prevail in summary judgment.  *Harrison v. Eddy Potash, Inc.*, 248 F.3d 1014, 1024–26 (10th Cir. 2001).  Defendant argues that it can do so.  (Def.'s Br. at 17–22.)

The first prong may be satisfied where an employer has promulgated an anti-harassment policy with complaint procedure.  *See Faragher*, 524 U.S. at 807.  Here, Defendant argues that it had an effective, widely-distributed policy in place for reporting and remedying sexual harassment.  (Def.'s Br. at 17.)  Defendant's employee manual stated its harassment and discrimination procedure partly in bold letters as follows:

> **If you ever feel that you have been harassed by a manager, supervisor, fellow employee or other party associated with your work, you must report such an incident as soon as possible to either [Defendant's] [c]orporate offices . . . or [Defendant's] EMPLOYEE CONCERN HOTLINE . . . which is available twenty-four hours a day.** You need not identify yourself to report improper activities via the Hotline.  The information you provide, whether in person or via the Hotline, will be thoroughly and promptly investigated.

> [Defendant] will retain confidential documents of all allegations and investigations and will take appropriate corrective action, including disciplinary measures when justified, to remedy all violations of this policy.

(*Id.*, Ex. A–1 at 8 [Employee Manual] [emphasis in original].)  Moreover, the parties do not dispute that Plaintiff signed an anti-discrimination policy containing the bolded language referenced above, as well as an additional instruction that:

> If your concern requires immediate attention, please notify someone in authority whom you are comfortable with at your work location, as well as report your concern to the [c]orporate offices.  Any employee having any knowledge or witnessing any form of discrimination must report such conduct directly to their [sic] manager and or [sic] the Human Resources Department no later than the following workday.

(*Id.*, Ex. A–16 [Non-Discrimination Policy]; *see also id.*, Statement of Undisputed Material Facts ¶¶ 8–9, *admitted in relevant part at* Pl.'s Resp., Disputed Material Facts ¶ 8.)  Rather than responding to Defendant's arguments, Plaintiff contends that when she complained of sexual harassment to Mr. Sitzman, he "failed to take reasonable care and promptly correct" the harassment, "thereby showing Defendant's sexual harassment policies requiring an employee to contact its [sic] direct manager are not adequately suitable to the employment circumstance." (Pl.'s Resp. at 28.)  Plaintiff's *non sequitur* is utterly unavailing.  Not only does Plaintiff fail to address the evidence supporting Defendant's arguments, Plaintiff directly contradicts said evidence in suggesting that Defendant's policy required employees who experienced harassment to report to their supervisors.  (*Id.*)  The record evidence clearly and expressly shows that Defendant required its employee-victims to report any harassment to Defendant's corporate offices or to Defendant's employee concern hotline.  (Def.'s Br., Ex. A–1 at 8 [Employee

Manual], Ex. A–16 [Non-Discrimination Policy].)  Plaintiff points to no evidence to support her

disingenuous contention to the contrary and I decline the opportunity to locate any such evidence

for her.  *See United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like

pigs, hunting for truffles buried in briefs.").  In accordance with the foregoing, I find Defendant

has established that it had in place an adequate policy for reporting and resolving complaints of

sexual harassment and, thus, has satisfied the first prong of the affirmative defense.  *Suders*, 542

U.S. at 134.

     As to the second prong, Defendant argues that Plaintiff did not make reasonable attempts

to comply with Defendant's anti-discrimination policies.  (Def.'s Br. at 17.)  Plaintiff counters that

she indeed complied by: (1) reporting the harassment to Mr. Sitzman; and (2) calling both the

employee concern hotline and Defendant's corporate offices.  (Pl.'s Resp. at 29.)  Again, I

underscore that Defendant's anti-discrimination policy expressly stated that employees "must

report" harassment to either Defendant's corporate offices or the employee concern hotline, and

not necessarily to their supervisors.   (Def.'s Br., Ex. A–1 at 8 [Employee Manual], Ex. A–16

[Non-Discrimination Policy].)  Accordingly, I do not consider Plaintiff's complaints to Mr.

Sitzman, especially given that Plaintiff does not allege she believed Mr. Sitzman was somehow

connected to Defendant's corporate offices, human resources department, or employee concern

hotline. (Pl.'s Resp., *passim.*)  While Plaintiff's statements to Mr. Sitzman might be relevant in

analyzing employer liability through negligence, I again emphasize that Plaintiff has not pursued

this theory in her brief — at least not beyond suggesting that she might so do.  (*Id.* at 24.)

-21-

As to Plaintiff's remaining allegations, although Plaintiff asserts that she called both the employee concern hotline and Defendant's corporate offices, Plaintiff admits that *she did not report any harassment* in either attempt.[7]  More specifically, Plaintiff asserts that the employee concern hotline was actually a facsimile line.  (Def.'s Br., Excerpts of Dep. Tr. of Tara Newland at 89–90.)  Plaintiff testified that she attempted to send a facsimile stating only "please call me" and not "detailing anything" about the alleged harassment she experienced.  (*Id.*, Excerpts of Dep. Tr. of Tara Newland at 90, 176.)  Further, Plaintiff testified that when she called Defendant's corporate offices, she left a message stating only her name and telephone number and requesting a return phone call.  (*Id.*, Excerpts of Dep. Tr. of Tara Newland at 100.)  Given Plaintiff's admitted failure to report any harassment as required by Defendant's policies, I find that Plaintiff failed to make reasonable attempts to comply therewith.  Consequently, I find that Defendant has adequately proven its affirmative defense against Plaintiff's hostile work environment claim and is entitled to summary judgment in connection therewith.

**3.    Conclusion**

Based on the foregoing it is therefore ORDERED that:

1.  Defendant's motion for summary judgment (# 23) is GRANTED.

2.  The clerk shall forthwith enter judgment in favor of Defendant and against

---

[7]In viewing the evidence in a light most favorable to Plaintiff, as required, I effectively ignore her problematic statements in her affidavit to the EEOC that she made these calls in March 2003 to report harassment that took place from April 2003 to June 2003.  (Pl.'s Resp., Ex. 22 at 3 [EEOC Affidavit].)

Plaintiff, dismissing Plaintiff's claims with prejudice.  Defendant may have its costs by filing a bill

of costs within eleven days of the date of this order.

       Dated this 4th day of January, 2007

                             BY THE COURT:

                             s/ Edward W. Nottingham
                             EDWARD W. NOTTINGHAM
                             United States District Judge